**UNITED STATES of America, Plaintiff–Appellee,**

v.

**John L. EINUM and Joann F. Einum, Defendants–Appellants.**

No. 92–3595.

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1993.

Decided May 10, 1993.

Jean–Marie Reilly, Office of the U.S. Atty., Madison, WI, (argued), for plaintiff-appellee.

Mark Bromley, Kinney, Urban, Schrader, Bromley, Kussmaul & Soman, Lancaster, WI, (argued), for defendants-appellants.

Before EASTERBROOK and KANNE, Circuit Judges, and ENGEL, Senior Circuit Judge.*

EASTERBROOK, Circuit Judge.

John and Joann Einum borrowed some $150,000 from the Farmers Home Administration. The debt was secured by a mortgage on their farm in Wisconsin. They have not repaid. After the FmHA commenced foreclosure proceedings the Einums admitted that the agency was entitled to this relief— eventually. They asked the court to delay the sale for one year, corresponding to the "redemption" period that Wisconsin affords borrowers before a lender may put real estate on the auction block. Wis.Stat. § 846.-10(2). The year's delay is a moratorium before foreclosure rather than a period in which to redeem after sale, but the parties do not contend that anything turns on this difference. Relying on *United States v. Victory Highway Village, Inc.*, 662 F.2d 488, 497–98 (8th Cir.1981), which holds that the Department of Housing and Urban Development may foreclose without regard to state redemption periods, the district court ordered the Einums' farm sold if they did not pay during the next 60 days. This 60–day grace period has no source in either state or federal law; it was the court's invention, from which the United States has not appealed. The Einums, who have appealed, ask for the application of state law.

Only one court of appeals has addressed the question whether persons who borrow from the FmHA receive the benefit of state redemption periods. *United States v. Ellis*, 714 F.2d 953 (9th Cir.1983), holds that they do, relying on *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). *Kimbell Foods* establishes that although "federal law governs questions involving the rights of the United

* Hon. Albert J. Engel, of the Sixth Circuit, is sitting by designation.

States arising under nationwide federal programs", *id.* at 726, 99 S.Ct. at 1457, state law supplies the content of federal law unless Congress has established distinctively federal rules. *Kimbell Foods* rejected arguments that federal loan programs by their nature call for uniform federal rules and that the government's status as a "lender of last resort" justifies giving it priority over competing private claimants. *Ellis* concluded that both the method and the result of *Kimbell Foods* apply to redemption periods as fully as to the other aspects of state law that *Kimbell Foods* addressed. *Victory Highway Village* articulates positions the Court unanimously rejected more than a year earlier in *Kimbell Foods,* a case the eighth circuit did not mention.

Although *Ellis* persuasively explains why state redemption periods apply to FmHA loans when federal law is silent, the statute books have put on weight in the decade since that opinion. The Agricultural Credit Act of 1987, Pub.L. 100–233, ·101 Stat. 1568, substantially amended 7 U.S.C. § 1985, which governs the procedures the FmHA uses to dispose of property securing defaulted loans, and the Secretary of Agriculture made extensive revisions to the corresponding regulations. Statute and regulations together prescribe a *lengthy* sequence of steps, both before and after a sale. Today the FmHA routinely excuses the first 180 days of delinquency. A borrower more than 180 days in default receives a notice and an opportunity to participate in the "primary and preservation loan service programs." 7 C.F.R. §§ 1951.907(f), 1951.911(a). A form lets the borrower elect among programs for deferring, rescheduling, and renegotiating the interest rate on the loan. 7 C.F.R. Part 1951, subpart S, exhibit A. To be eligible for one or more of these, the borrower must provide a plan showing that the operation of the farm will permit him to repay the loan over a longer period (or with lower interest, or both). Application kicks off an administrative process that, including appeals, may be lengthy; during all of this time the borrower remains in possession of the farm. See generally 7 C.F.R. Part 1951.

A borrower ineligible for any of these programs receives an option to pay off the loan at the "net recovery value" (a term defined by 7 C.F.R. § 1951.909) within 45 days. A borrower who does not exercise this option may elect during the next 180 days to participate in a "preservation loan service program" that provides for continued occupancy of the farm, provided the borrower conveys title to the property to the FmHA and makes payments at a reduced level. By conveying the property to the FmHA under a sale and leaseback, the farmer activates yet another opportunity to redeem the land "[d]uring the 180–day period beginning on the date of acquisition, or during the applicable period under State law". 7 U.S.C. § 1985(e)(1)(A)(i). These rights come "in addition to any such right of first refusal under the law of the State in which the property is located." 7 U.S.C. § 1985(e)(1)(E).

Only a borrower whose loan has remained in default through all of these periods and has neither persuaded the Secretary to forego foreclosure, see 7 U.S.C. § 1981a, nor exercised any of the options provided, stands to lose his farm. As this capsule description reveals, the FmHA does not even *begin* a foreclosure action until long after the time that states customarily provide for cure and redemption. Judicial delay (six months between the complaint and the judgment in this case) adds to the borrower's possession. And if, as frequently occurs, the FmHA itself acquires the property at the foreclosure sale, then § 1985(e)(1) provides the borrower with yet another opportunity to redeem. See also 7 U.S.C. § 1985(e)(1)(C)(i), requiring the FmHA, when trying to sell the acquired farm, to give a preference to the "immediate previous borrower-owner".

Redemption periods under state law often provide borrowers with their only post-default opportunity to pay off their loans from private lenders and reclaim their land. Federal law gives borrowers from the FmHA such opportunities in abundance. What the Einums want is not the application of state rather than federal law but the tacking of state and federal periods. After receiving the benefit of the extended periods under federal law, they want the insertion of a further one-year delay under state law, to be followed by the additional 180 days that § 1985(e)(1) affords if the FmHA should acquire the property at auction. *Kimbell Foods* does not call for this mixture of state

and federal rules. To the contrary, the Court touted the benefits of applying state law as an integrated whole, so that borrowers from private and public sources would be treated identically. 440 U.S. at 739–40, 99 S.Ct. at 1464. Equal treatment is the farthest thing from the Einums' minds; they want to make out better than they would if either state or federal law applied exclusively.

State law supplies the content of federal law "when Congress has not spoken". *Kimbell Foods,* 440 U.S. at 727, 99 S.Ct. at 1457–58. Congress and the Secretary of Agriculture have resolved the questions this case presents. The sequence provided by statute and regulation—including state law to the extent § 1985(e)(1) provides—governs the relations between borrowers and the FmHA. We assume that Wisconsin's law, despite its status as a moratorium, is an "applicable period under State law" for purposes of § 1985(e)(1), so that the Einums will have a year to redeem if the FmHA acquires their farm. No further delay preceding foreclosure, whether based on state law or devised by a district judge, is appropriate.

AFFIRMED.