# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1152

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | |
| v. | * | On Appeal from the United |
| | * | States District Court for the |
| Stute Company, Inc., | * | District of Nebraska. |
| | * | |
| Defendant-Appellant; | * | |
| | * | |
| S.R. Livestock, Inc.; | * | |
| State Bank of Benkelman, Nebraska; | * | |
| A. M. Hahn, | * | |
| | * | |
| Defendants. | * | |

_____

Submitted: August 26, 2004
Filed: March 30, 2005

_____

Before LOKEN, Chief Judge, BEAM, and WOLLMAN, Circuit Judges.

_____

BEAM, Circuit Judge.

The United States brought an action to foreclose a mortgage Stute Company, Inc. (Stute) had given it to secure a loan. The district court granted the United States' motion for summary judgment, entered judgment, decreed foreclosure of the mortgage, and ordered a sale of the property. Stute appeals. We dismiss the appeal

insofar as Stute has not timely appealed the summary-judgment ruling and vacate and remand with instructions to dismiss because the remaining issues are now moot.

## I. BACKGROUND

In April 1980, the United States, through the Farmers Home Administration, lent money to Stute. As security, Stute gave the United States a real-estate mortgage covering land located in Dundy County, Nebraska. Stute fell into default on the loan. In July 2001 the United States filed an action to foreclose the mortgage to satisfy the debt.

The district court granted the United States' motion for summary judgment, decreed foreclosure, and ordered that the property be sold after a twenty-day redemption period had elapsed. Stute then filed various motions. Some sought amendments to the court's judgment, and they are detailed below. Another sought to stay the foreclosure sale under Nebraska law. The district court denied the motion to stay the foreclosure sale. The United States sought and obtained an order of sale from the district court clerk, scheduling the sale for February 11, 2004. Stute paid the underlying indebtedness it owed to the United States on February 10, 2004. As a result, the United States cancelled the sale.[1] Stute's appeal questions the district court's grant of summary judgment, its denial of Stute's motion to stay the foreclosure sale, and the order of sale issued by the clerk of the district court.

_____

[1]The United States also asked the district court to vacate its prior judgments and dismiss the action. That motion, however, was presented to the court after the notice of appeal had been filed. Thus, the district court found it had no jurisdiction to consider the motion and forwarded the motion to us.

## II.    ANALYSIS

### A.    Summary Judgment

Stute claims the district court erred in granting the United States' summary-judgment motion because the debt secured by the mortgage was not collectible and, thus, the mortgage was not enforceable. The United States argues that we lack jurisdiction, claiming Stute filed its notice of appeal too late to present that question. We agree. A party must file a notice of appeal with the district court within sixty days of the order or judgment from which the appeal is taken when the United States is a party. Fed. R. App. P. 4(a)(1)(B). "Timely filing is not merely a procedural requirement, but 'is mandatory and jurisdictional.'" United States v. Fitzgerald, 109 F.3d 1339, 1342 (8th Cir. 1997) (quoting Bartunek v. Bubak, 941 F.2d 726, 728 (8th Cir. 1991)). Stute filed its notice of appeal on January 14, 2004. The district court entered judgment on October 10, 2003, amended it on October 15, 2003 (Amended Judgment), amended it again on November 5, 2003 (Second Amended Judgment), and amended it a final time by order on November 25, 2003 (November 25 Order). The earliest district court order that is within the Rule 4(a) time frame is the November 25 Order. See Fed. R. App. P. 4(a)(1)(B) (notice of appeal must be filed within sixty days of the judgment appealed). If the Rule 4 clock began to run upon the original entry of judgment, the Amended Judgment, or the Second Amended Judgment then Stute's appeal was untimely and we lack jurisdiction.

The district court amended its judgments because State Bank of Benkelman (SBB) purportedly had a lien on the mortgaged property. On October 10, 2003, when the first judgment was entered, the amount of SBB's claim, if any, remained unknown. The district court ordered SBB to prove up the amount of its lien within ten days. SBB filed a "Motion for Judgment" on October 14, 2003. Construing the motion as one to make further factfinding under Federal Rule of Civil Procedure 52(b), the district court granted the timely motion and entered the Amended Judgment on

October 15, 2003, to include a debt to SBB for approximately $58,000 and a lien for that amount on the subject property.

On October 16, 2003, Stute filed two sets of papers that attacked SBB's debt and lien and argued that SBB's claim had been extinguished in a prior bankruptcy. On October 22, 2003, the district court construed Stute's papers as a motion to alter or amend the judgment and ordered SBB to file a brief in response. On October 30, 2003, SBB filed a brief claiming the amount of the debt was correct but that it indeed had no lien on the property because the bankruptcy court's decree had extinguished it. The district court accordingly granted Stute's October 16 motions and entered the Second Amended Judgment on November 5, 2003.

The Second Amended Judgment appropriately stated that SBB had no lien on the subject property, but it retained the language about the debt that Stute purportedly owed SBB. This language posed problems to Stute when it sought to borrow money to pay the debt that the United States was seeking to satisfy through the foreclosure. So Stute contacted SBB and requested that it clarify the court's understanding of the bankruptcy decree, which, according to Stute, had extinguished the debt as well. On November 14, 2003, SBB filed a "Second Brief in Response to Memorandum and Order Dated October 22, 2003" (Second Brief). In that brief, SBB acknowledged that Stute owed it no money. On November 24, 2003, Stute filed a motion entitled, in relevant part, "Renewed Motion that the United States District Court Stay Its Decree of Sale in Favor of the United States Until the Court Has Once Again Amended Its Final Decree and Order such that the Third Amended Order Indicates that the State Bank of Benkelman Has No Remaining Claim Against the Stute Company" (Renewed Motion). The district court granted that motion in its November 25 Order and amended the Second Amended Judgment to say that Stute owed nothing to SBB.

Stute had sixty days from the disposition of the United States' summary-judgment motion to file his notice of appeal. Fed. R. App. P. 4(a)(1)(B). Certain

-4-

post-judgment motions filed under the Federal Rules of Civil Procedure lengthen the time within which the notice of appeal must be filed. Those motions must be "timely file[d]" by a party. Fed. R. App. P. 4(a)(4)(A). SBB's October 14 motion and Stute's October 16 motions, all of which were construed as motions under Rule 52(b), were filed within ten days of the of the judgments they sought to amend. Thus, they were timely, Fed. R. Civ. P. 52(b), and therefore the time to appeal began to run "for all parties from the entry of the order disposing of the last such remaining motion." Fed. R. App. P. 4(a)(4)(A). The last order disposing of those timely motions was entered on November 5, 2003.

The United States argues that the time for appeal began to run on November 5, 2003, and therefore Stute's January 14, 2004, notice of appeal was untimely because it was filed more than sixty days after the order was entered. Stute argues that SBB's November 14 Second Brief constituted a motion attacking the judgment under Rule 59(e), and that, as such a motion, it was timely because it was filed within ten days of the November 5 Second Amended Judgment. If SBB's Second Brief were a Rule 59(e) motion, we would agree that Stute's January 14 notice of appeal was timely because it was filed within sixty days of the November 25 Order that disposed of that motion. But SBB's Second Brief cannot be construed as a motion. Motions under the Federal Rules of Civil Procedure must, among other things, "set forth the relief or order sought." Fed. R. Civ. P. 7(b)(1). The closest this brief comes to such a statement is, "[t]o the extent the Decree in this case needs to be modified to satisfy potential lenders of the Defendants, State Bank of Benkelman has no objection to such modification," and "State Bank of Benkelman has no objection to any further amendment to the Decree which will satisfy the Court and the other parties." SBB's Second Brief does not seek any relief or order. Cf. Riley v. N.W. Bell Tel. Co., 1 F.3d 725 (8th Cir. 1993) (dismissing appeal for want of jurisdiction because the appellant's motion to amend the judgment failed to comply with Rule 7).

In fact, neither the district court nor Stute understood the Second Brief as a motion. Stute filed its Renewed Motion on November 24 to correct the error, and the district court ordered the Second Amended Judgment amended based on Stute's Renewed Motion.[2] That cumbersomely titled motion—even if we construe it as a Rule 52(b), Rule 59(e), or a Rule 60(b) motion—sought an amendment to the court's Second Amended Judgment that was filed on November 5. But it was not filed on or before November 19, 2003—the final day of the ten-day period. See Fed. R. App. P. 4(a)(4)(A)(ii, iv, vi), 26(a); Fed. R. Civ. P. 6(a). Thus, that Renewed Motion did not toll the time in which Stute could file its notice of appeal, and the November 5 Second Amended Judgment started the clock for Rule 4 purposes. We are therefore without jurisdiction to consider the errors Stute assigns to the district court's grant of summary judgment—that the mortgage was unenforceable because the underlying debt was unenforceable. Fitzgerald, 109 F.3d at 1341-42.

## B.    Motion for Stay

Stute's notice of appeal, however, lists more than the district court's grant of summary judgment. Specifically, Stute appeals the district court's denial of its motion to stay under Nebraska law. That motion was denied on December 12, 2003. So Stute's appeal is timely with regard to the disposition of that motion.

Stute claims it was entitled to a nine-month stay under section 25-1506 of the Nebraska Revised Statutes. Under section 25-1506, "[t]he order of sale on all decrees for the sale of mortgaged premises shall be stayed for the period of nine months from

---

[2]Similarly, it would be too much of a stretch to conclude that Stute's October 16 motion was a "remaining motion" for purposes of Rule 4(a)(4)(A). The November 5 order disposed of that motion and Stute recognized the necessity of the further motion it made on November 24. And the district court did not base its November 25 Order on the October 16 motion.

and after the rendition of such decree."  If this provision applies to the Nebraska mortgage at issue, then a stay should have been entered.  The United States responds by arguing that this provision of Nebraska law was validly waived by Stute in the mortgage.  See  United States v. Jacobsen, 319 F.3d 323, 324 (8th Cir. 2002) (per curiam) (finding waiver valid under United States v. Birchem, 100 F.3d 607, 609 (8th Cir. 1996)).  However, the waiver provision the United States relies on only waives "any right of redemption . . . following any foreclosure sale."  Section 25-1506 does not grant the mortgagor any right of redemption, and the stay it allows the defendant-mortgagor is, by definition, pre-sale.  Thus, this argument misses the mark.

However, many provisions of state law are preempted when the United States acts as mortgagee.  See United States v. Kimbell Foods, Inc., 440 U.S. 715 (1979). In any event, Stute has made the issue of a stay under state law moot.  When events occur that leave the appellate court with no remedial power, the appeal is moot. Church of Scientology v. United States, 506 U.S. 9, 12 (1992); Fitzgerald, 109 F.3d at 1342.  After the district court entered its Second Amended Judgment and denied the motion to stay, Stute did not seek a stay pending appeal.  Rather, it paid the debt that the United States was seeking to satisfy through the mortgage.  Stute now claims that the district court erred by refusing to stay the foreclosure sale for nine months under Nebraska law.  But the foreclosure sale has not occurred, nor will it occur.  The United States cannot request an order of sale now that it has accepted payment, and we do not believe we have the power to direct a district court to stay a sale that will not occur. Thus, the dispute over the stay has become moot.

Stute suggests that we order the United States to return the money Stute paid to avoid the foreclosure sale.  If we were to order the money returned, a foreclosure sale would be inevitable, and a stay would be within a court's power to issue.  But we have no power to order the money returned.  Stute cites a Nebraska case for the proposition that a judgment debtor who pays a judgment to prevent execution on his property does not thereby divest himself of the ability to pursue an appeal.  While that

premise is correct, Tungseth v. Mut. of Omaha Ins. Co., 43 F.3d 406, 409 (8th Cir. 1994), Stute's case is quite distinguishable.  When a party pays a judgment that is later invalidated, restitution remains an available and appropriate remedy because the payee has no right to the payment made under the invalidated judgment.  The availability of that remedy keeps the dispute from becoming moot, even after payment.  Had the mortgage here been unenforceable, the United States would not be entitled to the payment Stute made, restitution would be an available remedy, and the availability of that relief would keep the enforceability question from becoming moot.  But we do not have the merits of the summary-judgment ruling—that which settled the enforceability question—before us because we lack jurisdiction to consider that issue.  See ante.  Thus, the district court's ruling on the validity of the debt underlying the mortgage, and therefore the enforceability of the mortgage, is settled as the law of the case.  In re Design Classics, Inc., 788 F.2d 1384, 1386 (8th Cir. 1986).  So the United States was and is legally entitled to the payment it accepted.  This remains true even if the foreclosure sale should have been stayed.  We cannot order the United States to refund a payment to which it was legally entitled.  Thus, restitution is not an available remedy, and the question whether a stay should have issued remains moot because we have no way of correcting the alleged error that Stute presents.  By choosing to pay the United States—rather than, for instance, posting a supersedeas bond—Stute limited our remedial power and thereby mooted the stay issue.[3]

---

[3]Stute has also brought a third party's rights into this case.  Stute sold its interest in the property to Sitzman-Mitchell & Company, giving it a deed, and retained an option to repurchase the property.  Stute has given us no information as to the terms of the option.  In this regard, ordering the United States to pay money back to Stute, even though (1) we have no assurances that Stute will reacquire the property and (2) we are unsure of a court's ability to order Stute and the absent third party to consummate such a transaction, implicates the rights of a third party that is not before the court.  This further supports our mootness determination.  See Matter of Magnes, 29 F.3d 1034, 1042-43 (5th Cir. 1994).

## C.    Order of Sale

Finally, Stute asserts as error the order of sale issued by the district court clerk. Stute raised this error before the district court in its November 24 Renewed Motion. The district court denied this part of the motion on November 25, 2003.  According to Stute, the order of sale the clerk issued was invalid because it was issued under the October 15, 2003, Amended Judgment, which was superseded by the Second Amended Judgment on November 5, which was amended by the November 25 Order. The order of sale was never executed by the United States Marshals because the sale was cancelled by the United States after Stute's payment.  Even if the order of sale was deficient, the United States' action accorded Stute the relief we would be able to give it.  Thus, this issue is also moot.  See McMillan v. Chief Judge, Circuit Ct. of Greene County, 711 F.2d 108, 109 (8th Cir. 1983).

## III.    CONCLUSION

Accordingly, we vacate the judgments of the district court that were properly appealed and remand with directions to dismiss the motions relating to those items as moot.  CIA v. Holy Spirit Ass'n for the Unification of World Christianity, 455 U.S. 997 (1982) (mem. order).  The appeal is dismissed with regard to Stute's untimely appeal of the district court's summary-judgment ruling.  We return the United States' motion to vacate and dismiss to the district court.  If the district court chooses to entertain the motion—which is premised on the impact of Stute's payment of the underlying indebtedness—the United States should inform the district court whether it has made and recorded the appropriate release of its interest in the subject property.

_____